UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL MARIANO S.,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, CENTRAL VALLEY ANNEX DETENTION FACILITY, et al.,<br><br>Respondents. | No. 1:26-cv-05764-TLN-CSK<br><br>A# 072-847-441<br><br>**RELEASE ORDER** |

This matter is before the Court on Petitioner Miguel Mariano S.'s[1] ("Petitioner") Petition for Writ of Habeas Corpus (ECF No. 1) and Motion for Temporary Restraining Order ("TRO") (ECF No. 2). Respondents filed a response. (ECF No. 7.) For the reasons set forth below, the Habeas Petition is GRANTED, the Motion for TRO is DENIED as moot, and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. Factual and Procedural Background

Petitioner is a noncitizen who entered the United States in 1994. (ECF No. 1 at 5, 98.) He has lived in this country ever since. (*Id.* at 5.) Petitioner became a legal permanent resident in 1995. (*Id.* at 94; ECF No. 7-1 at 2.) He has two U.S. citizen children. (ECF No. 1 at 5.) Prior to his current detention, Petitioner worked for a transportation service for school children as a driver and mechanic. (*Id.* at 6, 29.) Petitioner submits numerous letters of support from his partner, family members, friends, employer, church leaders, and post-release case manager attesting to his good character and positive impact on his community. (*Id.* at 24–84.)

Though the details are unclear from the record, it appears that at some point Petitioner was convicted of a crime and completed his sentence. (*Id.* at 6; ECF No. 7-1 at 2.) Petitioner's residency was revoked. (ECF No. 1 at 6.) He was ordered removed on October 22, 2003. (*Id.* at 106; ECF No. 7-1 at 2.) Petitioner was placed on an Order of Supervision on April 17, 2008. (ECF No. 1 at 106.)

On May 31, 2026, Petitioner was arrested by U.S. Immigration and Customs Enforcement ("ICE") in Miami, Florida. (ECF No. 7-1 at 2.) The Department of Homeland Security issued a written notice revoking his release the following day. (ECF No. 7-3 at 1.) The notice states Petitioner's Order of Supervision was revoked pursuant to 8 C.F.R. § 241.4(l)(2) but does not identify the reason why his release was revoked. (*Id.*) According to the government, "the record does not reflect an individualized reason for revocation or a prompt informal interview." (ECF No. 7 at 2.) While in ICE custody, Petitioner has been moved to more than six detention centers in four different states. (ECF No. 1 at 6.) He was eventually transferred to Central Valley Annex, where he remains detained. (*Id.* at 2.)

Petitioner filed the instant petition for writ of habeas corpus on July 24, 2026. (*Id.* at 1.) Petitioner challenges the lawfulness of his civil immigration detention and seeks immediate release. (*Id.* at 17–18.)

## II. Standard of Law

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004)

(citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

Petitioner claims his detention violates the Fifth Amendment Due Process Clause. (ECF No. 1 at 17–18.) In opposition, Respondents appear to concede they violated their own regulations governing the revocation of an Order of Supervision. (ECF No. 7 at 2.) Respondents submit that the appropriate remedy here is ordering Petitioner's immediate release under the same supervision conditions with no additional removal restrictions. (*Id.*)

Respondents have authority to detain noncitizens with final orders of removal to effectuate deportation. *See* 8 U.S.C. § 1231; *Zadvydas*, 533 U.S. at 697. But when a noncitizen has been released from immigration detention, certain ICE regulations govern how and when the agency may revoke that release and re-detain the noncitizen. *See* 8 C.F.R. §§ 241.13(i), 241.4(l). These procedures protect important due process rights owed to noncitizens.[2] *See Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) (noting that 8 C.F.R. § 241.13(i) was "promulgated to protect a fundamental right derived from the Constitution").

"ICE, like any agency, 'has the duty to follow its own federal regulations.'" *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205

---

[2] It is fundamental that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citing *Plyler v. Doe*, 457 U.S. 202, 210 (1982); *Mathews v. Diaz*, 426 U.S. 67, 77 (1976); *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596–598 & n.5 (1953); *Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)).

(1st Cir. 2003)); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (reversing dismissal of habeas petition where Board of Immigration Appeals failed to follow its own regulations). "Where an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute,' like the opportunity to be heard, 'and [ICE] fails to adhere to it, the challenged [action] is invalid." *Rombot*, 296 F. Supp. 3d at 388 (quoting *Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993)); *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Because there is no indication that ICE Regulations were followed . . . [petitioner's] re-detainment was unlawful.").

The notice issued to Petitioner after he was detained states that the revocation of his release was made pursuant to 8 C.F.R. § 241.4(l)(2). (ECF No. 7-3 at 1.) That regulation prescribes requirements for determining whether a noncitizen's release may be revoked as well as the procedures for doing so. 8 C.F.R. § 241.4(l)(1)–(3); *see Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 164 (W.D.N.Y. 2025) (explaining that the procedural requirements set forth in 8 C.F.R. § 241.4(l)(1) also apply to revocation under § 241.4(l)(2)). Revocation may occur if the revoking official determines:

> (i) The purposes of release have been served;
>
> (ii) The [noncitizen] violates any condition of release;
>
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against [the noncitizen]; or
>
> (iv) The conduct of the [noncitizen], or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R § 241.4(l)(2). ICE must provide notice to the noncitizen of the reasons for revocation, conduct an initial informal interview promptly after the noncitizen returns to custody, afford the noncitizen an opportunity to respond to the reasons for revocation, and provide review of the determination. *Id.* § 241.4(l)(1), (3).

Respondents concede that "the record does not reflect an individualized reason for revocation or a prompt informal interview." (ECF No. 7 at 2 (citing ECF No. 7-3 [Notice of Revocation of Release]).) The Court agrees. Accordingly, as ICE failed to comply with 8 C.F.R. § 241.4(l) in revoking Petitioner's release, his detention is unlawful.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.) IT IS HEREBY ORDERED:

1. Respondents must IMMEDIATELY RELEASE Petitioner Miguel Mariano S. (A# 072-847-441) from custody under the same conditions of release prior to his current detention. At the time of release, Respondents must return all of Petitioner's documents and possessions. **Respondents shall file a notice of compliance with this provision of the Court's Order within two (2) court days from the date of this Order.**

2. Respondents are ENJOINED from re-detaining Petitioner absent compliance with statutory and constitutional protections, including a minimum of seven-days' pre-deprivation notice and strict compliance with the requirements of 8 C.F.R. §§ 241.13(i), 241.4(l), or a pre-deprivation hearing before a neutral factfinder where Respondents show by clear and convincing evidence that material changed circumstances demonstrate (a) a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention. At any such hearing, Petitioner shall be allowed to have counsel present.

3. Petitioner's Motion for TRO (ECF No. 2) and Motion to Appoint Counsel (ECF No. 3) are DENIED as moot.

4. **The Clerk of Court is directed to serve Central Valley Annex with a copy of this Order.**

5. The Clerk of Court shall enter judgment in favor of Petition and close this case.

IT IS SO ORDERED.

DATE: August 6, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE